UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HILLARY JONES-MIXON,

Plaintiff,

v.

BLOOMINGDALE'S, INC., et al.,

Defendants.

Case No. 14-cv-01103-JCS

**ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL
ARBITRATION; DISMISSING CIVIL
PROCEEDINGS**

**Dkt. No. 4**

## I.      INTRODUCTION

Plaintiff Hillary Jones-Mixon filed this action alleging, *inter alia*, that she was wrongfully terminated and discriminated against because of her pregnancy.  Defendants in this action are Plaintiff's former employer, Bloomindales' Inc. ("Bloomingdales"), and former supervisor at Bloomingdales, Kristen Fries ("Fries").  Defendants filed a Motion to Compel Arbitration and Dismiss, or in the Alternative, Stay Civil Proceedings (hereafter, "Motion"), contending that Plaintiff is required to arbitrate this dispute pursuant to an arbitration agreement.  The Court finds this Motion suitable for determination without oral argument and vacates the hearing schedule for June 20, 2014, at 9:30 a.m.  *See* Civil L.R. 7-1(b).  For the reasons stated below, the Motion is GRANTED.[1]

## II.     BACKGROUND

### A.      Factual Allegations & Procedural History

Plaintiff was employed as a commissioned salesperson at Bloomingdales from February 5, 2013 to the day she was terminated on April 25, 2013.  Dkt. No. 1 at 9-25 ("Compl.") ¶ 1.  On her

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

1   first day working the floor, Plaintiff informed her supervisor, Defendant Fries, that she was

2   pregnant.  *Id*. ¶ 13.  In April 2013, Plaintiff submitted her request for time off for maternity leave.

3   *Id*. ¶ 14.  Plaintiff sent Defendant Fries an email on April 23, 2013, in which she wrote that she

4   was feeling ill due to her pregnancy and could not report to work that day.  *Id*. ¶ 15.  When

5   Plaintiff arrived for her next shift on April 25, 2013, she was terminated.  *Id*. ¶ 16.

6          Plaintiff filed a complaint in the Superior Court of California, County of San Francisco,

7   asserting state law claims for sex (pregnancy) discrimination, failure to provide reasonable

8   accommodation, retaliation, wrongful termination, and defamation.  On March 10, 2014,

9   Defendants removed the case to federal district court on the basis of diversity jurisdiction.  Dkt.

10   No. 1 (Notice of Removal).  Defendants moved to compel arbitration on May 15, 2014.  Dkt. No.

11   9 ("Motion").

12          **B.       The Arbitration Agreement**

13          Macy's, Inc. offers a dispute resolution program called "Solutions InSTORE," which

14   applies to employees of Macy's and Macy's subsidiaries, including Bloomingdales.  Declaration

15   of Erin Coney ("Coney Decl.") ¶ 4.  The Solutions InSTORE program involves four steps: (1) the

16   "Open Door" step in which employees bring their concerns to a supervisor or local management

17   team manager for informal resolution; (2) review by the Office of Senior Human Resources

18   Management; (3) a request for reconsideration by a panel of peers or by the Office of Solutions

19   InSTORE; and (4) binding arbitration.  *Id*. ¶ 9, Exhs. A-B.  A decision at any level is binding on

20   the employer, and the employee has the right to appeal each decision to the next step of the

21   program until a final, binding decision is rendered in arbitration.  Coney Decl., Exhs. A-B.

22          The arbitration agreement covers "all employment-related legal disputes, controversies or

23   claims arising out of, or relating to, employment or cessation of employment, whether arising

24   under federal, state or local decisional or statutory law…."  Coney Decl., Exh. A at 6.  The

25   agreement incorporates "the applicable law's statute of limitations."  *Id*. at 8.  Employees may

26   choose to opt out of the arbitration.  *Id*. at 2.  If the employee is covered by arbitration,

27   Bloomindales must also resolve all employment-related disputes by arbitration.  *Id*. at 7.

28          To initiate arbitration, the employee pays a filing fee of the lesser of one day's wage or

United States District Court
Northern District of California

2

1    $125.  Coney Decl. ¶ 15, Exh. A at 14.  Discovery prior to the arbitration proceeding includes

2    voluntary document disclosures, twenty interrogatories and three depositions per side, and the

3    arbitrator may allow more discovery "[u]pon the request of any party and a showing of appropriate

4    justification" so long as it is not "overly burdensome, and will not unduly delay the conclusion of

5    arbitration."  *Id*. ¶ 15, Exh. A at 10.  If the employee elects not to be represented by an attorney,

6    Bloomingdales is not allowed to have an attorney present at the arbitration proceedings.  *Id*. ¶ 15,

7    Exh. A at 9.  The arbitrator must render a written decision specifying any remedies that are

8    appropriate.  *Id*. ¶ 15, Exh. A at 14.  Unless the arbitrator determines the claim was frivolously

9    filed, Bloomindales must reimburse an employee's legal fees up to $2,500 for each year, and must

10   reimburse the employee for incidental expenses up to $500 if the employee is not represented by

11   counsel.  *Id*. ¶ 15, Exh. A at 15.

12          An employee may choose to opt out of the arbitration provision within 30 days of the date

13   of hire.  Coney Decl., Exh. A at 2.  If an employee seeks to opt out of the binding arbitration

14   agreement, he or she must submit an "Early Dispute Resolution Program Election Form"

15   (hereafter, "Election Form") to a P.O. box in Mason, Ohio within 30 days.  Coney Decl. ¶ 20; *see*

16   *also* Exh. C (Election Form).  The Election Form instructs employees to "RETURN THIS FORM

17   ONLY IF EXCLUDING YOURSELF FROM PARCIPATION IN THE BENEFITS OF

18   ARBITRATION UNDER SOLUTIONS INSTORE."  Coney Decl., Exh. C (emphasis in original).

19          The Election Form is provided to new employees with the Solutions InSTORE Brochure

20   during the new hire orientation process.  Coney Decl. ¶¶ 21-22; *see also* Exh. B (Solutions

21   InSTORE Brochure).  The Brochure summarizes each step of the Solutions InSTORE program,

22   including Step 4−Arbitration, and includes a complete copy of the Plan Document in the back of

23   the Brochure.  Coney Decl. ¶ 19; Exh. B.  After discussing the benefits of arbitration compared to

24   court proceedings, the Brochure informs employees in large, bold font that they have the option to

25   opt out of arbitration:

26          Step Four:  the decision is yours

27          Your Solutions InSTORE enrollment period will be your
28          opportunity to decide whether you want to receive all four steps of

United States District Court
Northern District of California

1    this program.  You are automatically covered by Step 4 unless you
2    choose to exclude yourself.  When covered by Step 4 final and
     binding arbitration, you and the Company agree to use arbitration as
3    the sole and exclusive means to resolving any dispute regarding our
     employment; we both waive the right to civil action and a jury trial.
4    If you decide you want to be excluded from participating in and
     receiving the benefits of Step 4, we need you to tell us in writing by
5    completing the form enclosed in this brochure and returning it to the
     Office of Solutions InSTORE at the address provided within 30 days
6    of your hire date.  In this case, Steps 1-3 will continue to apply to
     you – you will no longer, however, be eligible for the benefits
7    available under the Step 4: Arbitration process.

8    Coney Decl., Exh. B at 35 (emphasis in original).[2]

9            Upon receipt of the Solutions InSTORE Brochure during the new hire orientation process,

10   newly hired employees are required to physically or electronically sign a "Solutions InSTORE

11   New Hire Acknowledgement," (hereafter, "Acknowledgment Form").  Coney Decl. ¶ 22.  The

12   first paragraph of the Acknowledgement Form provides:

13           I have received a copy of the Solutions InSTORE brochure and Plan
             Document and acknowledge that I have been instructed to review
14           this material carefully.  I understand that I have 30 days from my
             date of hire to review this information and postmark my form to the
15           Office of Solutions InSTORE if I wish to exclude myself from
             coverage under Step 4 of the program, Arbitration.
16

17   Coney Decl., Exh. D.  Employees are also informed where they can obtain more information about

18   the Solutions InSTORE program or another copy of the Plan Document.  *Id*.  The

19   Acknowledgment Form further informs employees that a decision to opt out of arbitration "is kept

20   confidential and will not affect [their] job[s]."  *Id*.

21           To electronically sign an Acknowledgment Form, an employee must log in to an employee

22   website using the employee's Social Security number, date of birth and zip code.  Coney Decl. ¶

23   22; Declaration of Ragunathan Veeraraghavan ("Veer. Decl.") ¶ 5.  Once logged in, the employee

24

25           [2] The Office of Solutions InSTORE also provides Bloomingdales with a new hire
26   informational video.  Coney Decl. ¶ 25.  At the end of the video, arbitration is discussed, and
     employees are informed that, "[t]he fourth step, arbitration, will be provided to you, unless you
27   elect not to receive this benefit by making that choice on the Solutions InSTORE Election Form.
     Materials about the Solutions InSTORE program, and an Election Form, will be provided to you
28   for your review."  Coney Decl., Exh. F.

sees a screen list of the forms the employee must complete for employment.  Veer. Decl. ¶ 6, Exh. B.  Included in this list is the Acknowledgment Form.  *Id.*  To view the Acknowledgment form, an employee must click the "Fill in Form" link next to the Solutions InSTORE New Hire Acknowledgment place on the list.  *Id.* ¶ 7.  The next screen the employee sees is the Acknowledgment Form.  *Id.*  The employee can then click on the "I Certify" link at the bottom of the Acknowledgement Form, which prompts a dialogue box requesting the employee to electronically sign.  *Id.* ¶ 8. To electronically sign, the employee must again enter his or her Social Security number, date of birth and zip code.  *Id.* ¶ 9.

Defendants present evidence that Plaintiff electronically singed the acknowledgment form on January 29, 2014.  Coney Decl. ¶ 22, Exh. D; Veer. Decl. ¶ 13, Exh. F.

## III.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to settle a controversy through arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A court's role in applying the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  If the response is affirmative on both counts, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  *Chiron v. Corp. v. Ortho Diagnostics Systems*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).

In enacting the FAA, "Congress declared a national policy favoring arbitration…." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).  Thus, courts have consistently applied a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

## IV.     DISCUSSION

Defendants move to compel arbitration on the ground that Plaintiff is bound to the arbitration agreement because she did not opt out by submitting an Election Form within 30 days of her date of hire.  Plaintiff contends there is no admissible evidence of an agreement, and that she never consented to an agreement to arbitrate by simply not submitting an opt out form.

1   Plaintiff also contends that the arbitration agreement is invalid and unenforceable because it is

2   procedurally and substantively unconscionable.  The parties also dispute whether this action

3   should be dismissed or stayed pending arbitration.  These issues are discussed in turn.

4         **A.**        **Whether there was an Agreement to Arbitrate**

5               **1.**       **Admissible Evidence**

6         As a preliminary matter, Plaintiff appears to challenge the authenticity of the documents

7   showing that there was an agreement to arbitrate.  Plaintiff states that "[t]here is no declaration

8   from anyone purporting to have personal knowledge of the Agreement documents or their

9   execution."  Opposition at 1.  To the contrary, Erin Coney, the Director of Employee Relations for

10  Solutions InSTORE, submitted a declaration attaching the relevant documents which evidence the

11  arbitration agreement.  *See* Coney Decl., Exhs. A-D.  Coney serves as "custodian" for all the

12  records comprising the Solutions InSTORE program, and "personally reviewed" Plaintiff's

13  records to determine whether Plaintiff had returned an Election Form to opt out of arbitration.

14  Coney Decl. ¶ 3, 27.  Accordingly, to the extent Plaintiff challenges the authenticity of these

15  documents, the argument is not well taken.

16              **2.**       **Assent**

17        The threshold issue in deciding a motion to compel arbitration is "whether the parties

18  agreed to arbitrate."  *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir.

19  1988).  Whether the parties in this case entered into an arbitration agreement will be determined

20  under California contract law.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir.

21  2002).  Under California contract law, a valid contract exists only if the parties consent.  *United*

22  *States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).

23        In this case, Plaintiff did not expressly consent to arbitrate any disputes relating to her

24  employment with Bloomingdales.  Rather, Defendants present evidence that Plaintiff

25  electronically signed the Acknowledgment Form on January 24, 2013, thereby acknowledging that

26  she received the Solutions InSTORE Brochure and understood that she had 30 days to opt out of

27  Step 4 arbitration from the date of hire.  Coney Decl. ¶ 22, Exh. D; Veer. Decl. ¶ 13, Exh. F.

28  Defendants have also submitted evidence that Plaintiff never returned an Election Form to opt out

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of arbitration.  Coney Decl. ¶¶ 26-28.  Plaintiff has not submitted any declaration to rebut the

2    evidence submitted by Defendants.

3           Plaintiff contends, however, that her failure to return an Election Form is not evidence of

4    her consent to arbitration.  This argument has been rejected by the Ninth Circuit under similar

5    circumstances.  *See Najd*, 294 F.3d at 1109.  In addressing the employee's argument that his

6    failure to opt out to opt out of an arbitration agreement did not evidence his consent to arbitrate,

7    the Ninth Circuit cited the "general rule" that "silence or inaction does not constitute acceptance of

8    an offer."  *Id.* (quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372 (1993)).

9    Nevertheless, the court also noted that "where circumstances or the previous course of dealing

10   between the parties places the offeree under a duty to act or be bound, his silence or inactivity will

11   constitute his assent."  *Najd*, 294 F.3d at 1109 (quoting *Beatty Safway Scaffold, Inc. v. Skrable*,

12   180 Cal.App.2d 650 (1960)).

13          In *Najd*, the employer instituted a voluntary binding arbitration program to which the

14   employee was bound unless he submitted a form opting out of the program.  *Id.* at 1106.  The

15   Ninth Circuit held that Najd had consented to the agreement to arbitrate by reasoning that "where

16   the import of Najd's silence was as apparent as if he signed his consent, we may infer assent."

17   *Najd*, 294 F.3d at 1109.  The court inferred consent because Najd had signed an acknowledgement

18   form that described how to opt out, and because Najd had a reasonable amount of time (30 days)

19   to decide whether to opt out.  *Id.*  The court also noted that "Circuit City communicated in detail

20   and in writing the effect of Najd's acceptance on his right to bring claims against his employer,"

21   and that "Circuit City made clear that opting out of the agreement would have no effect on the

22   employment relationship."  *Id.* at 1109.  Accordingly, the court held that Najd's failure to opt out

23   of arbitration was "indistinguishable from overt acceptance…."  *Id.*

24          In *Gentry v. Superior Court*, the California Supreme Court also found that an employee

25   consented to an arbitration agreement under similar circumstances.  42 Cal.4th 443, 468 (2007),

26   *abrogated on other grounds in AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746, 179

27   L.Ed.2d 742 (2011).  The plaintiff in *Gentry* signed a similar acknowledgment form that indicated

28   that if he wished to opt out of arbitration, he must send in an opt out form within 30 days.  The

                                                    7

1    court wrote that "[t]he question is not whether the acknowledgment form itself is a contract−it is

2    not−but rather whether Gentry's signature on that form reasonably led Circuit City to believe that

3    his failure to opt out constituted acceptance of the arbitration agreement."  *Id*.  The court held that

4    "in signing the [acknowledgment] form, Gentry manifested his intent to use his silence, or failure

5    to opt out, as a means of accepting the arbitration agreement.  Having indicated his intent, he may

6    not now claim that the failure to opt out did not constitute acceptance of the arbitration

7    agreement."  *Id*.

8          District courts, including at least one court in this District, have applied the reasoning of

9    *Najd* and *Gentry* to bind Macy's employees to the arbitration agreement in the Macy's Solutions

10   InSTORE program.  *See Quevado v. Macy's, Inc.*, 798 F.Supp.2d 1122, 1133 (C.D. Cal. 2011);

11   *Burnett v. Macy's West Stores, Inc.*, No. 11-1277, 2011 WL 4770614, at *3 (E.D. Cal. Oct. 7,

12   2011); *Hicks v. Macy's Dept. Stores, Inc.*, No. 06-2345 CRB, 2006 WL 2595941, at *2 (N.D. Cal.

13   Sept. 11, 2006).  The plaintiff in *Hicks* was an employee at Macy's before the Solutions InSTORE

14   program was implemented.  *Hicks*, 2006 WL 2595941, at *1.  On two occasions in 2003 and 2004,

15   Macy's provided all employees with information about the Solutions InSTORE program,

16   instructing employees such as Hicks to submit an Election Form within a prescribed time if they

17   wished to opt out of the arbitration agreement.  *Id*.  The plaintiffs in *Burnett* and *Quevado*, like

18   Plaintiff in this case, received the Solutions InSTORE Brochure and signed an Acknowledge Form

19   at the time they were hired.  *Quevado*, 798 F.Supp.2d at 1128; *Burnett*, 2011 WL 4770614, at *2.

20   None of these plaintiffs submitted the Election Form to opt out.  The district courts held that they

21   had assented to an agreement to arbitrate.  *Quevado*, 798 F.Supp.2d at 1133; *Hicks*, 2006 WL

22   2595941, at *2; *Burnett*, 2011 WL 4770614, at *3.

23          This Court finds that Plaintiff consented to the arbitration agreement.  Plaintiff signed an

24   Acknowledgment Form on January 24, 2013, thereby acknowledging that she received the

25   Solutions InSTORE Brochure and understood that she had 30 days to opt out of Step 4 arbitration

26   from the date of hire.  Coney Decl. ¶ 22, Exh. D; Veer. Decl. ¶ 13, Exh. F.  Plaintiff had thirty

27   days to decide whether or not to opt out, which is the same amount of time provided to the

28   plaintiffs in *Najd*, *Hicks* and *Burnett*.  Plaintiff did not submit an Election Form within 30 days,

United States District Court
Northern District of California

8

1    Coney Decl. ¶¶ 26-28, despite acknowledging her duty to do so if she wished to opt out of

2    arbitration, Coney Decl., Exh. D.  Accordingly, the Court finds that Plaintiff's signature on the

3    Acknowledgment form "reasonably led [Bloomingdales] to believe that [her] failure to opt out

4    constituted acceptance of the arbitration agreement," *Gentry*, 42 Cal.4th at 468, and that her failure

5    to opt out of arbitration was "indistinguishable from overt acceptance." *Najd*, 294 F.3d at 1109.

6         Plaintiff does not attempt to distinguish this case from the precedent discussed above.

7    From the Court's perspective, the only apparent difference is that Plaintiff electronically signed

8    the Acknowledgment Form.  Coney Decl. ¶ 22, Exh. D; Veer. Decl. ¶ 13, Exh. F.  However,

9    electronic signatures are valid in California.  *See* Cal. Civ. Code § 1633.7(a) ("A record or

10   signature may not be denied legal effect or enforceability solely because it is in electronic form.").

11   An "electronic signature is attributable to a person if it was the act of the person," which may be

12   shown by "the efficacy of any security procedure applied…."  Cal. Civ. Code § 1633.9(a).

13   Defendants have presented evidence that to sign the Acknowledgment Form, Plaintiff was

14   required to twice enter her Social Security number, birth date and zip code, and would not have

15   been able to electronically sign if the information was not matched correctly.  Veer Decl. ¶¶ 5, 9.

16   The Court thus finds that Plaintiff's electronic signature on the Acknowledgment Form is valid.

17        In any event, Plaintiff presents no evidence to rebut Defendant's evidence that Plaintiff

18   received and read the information about the Solutions InSTORE program, including the binding

19   arbitration clause.  The plaintiff in *Hicks* never signed any form acknowledging receipt of the

20   information about Solutions InSTORE and his ability to opt out within 30 days.  *Hicks*, 2006 WL

21   2595941, at *3.  Nevertheless, the court found that fact "immaterial" in light of the plaintiff's

22   failure to dispute that he in fact received and read such materials.  *Id*.  Similarly, here, Plaintiff has

23   not submitted any declaration challenging Defendant's evidence that she received, read,

24   understood and consented to the arbitration clause in the Solutions InSTORE program.

25   Accordingly, this case is indistinguishable from the decisions in *Najd* and *Gentry*.

26        **B.      Whether the Arbitration Agreement is Unconscionable**

27        Plaintiff also argues that the arbitration agreement is unconscionable, and therefore, invalid

28   and unenforceable.  This is a separate question from that of whether Plaintiff assented to the

United States District Court
Northern District of California

arbitration agreement.  *Gentry*, 42 Cal.4th at 468.  "Under California law, an agreement is unconscionable only if it is both procedurally and substantively unconscionable."  *Najd*, 294 F.3d at 1108 (citing *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal.4th 83, 99 (2000)).  Nevertheless, "while both must be present, they need not be present in equal amounts."  *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406 (2003).  " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' "  *Id.* (citing *Armendariz*, 24 Cal.4th at 114).

Procedural unconscionability focuses on "oppression" or "surprise" due to unequal bargaining power, and substantive unconscionability focuses on "overly harsh" or "one-sided" results.  *Armendariz*, 24 Cal. 4th at 114 (citation omitted).  "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Gentry*, 42 Cal.4th at 469 (internal citations and quotations omitted).  "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided."  *Id.*

### 1.        Procedural Unconscionability

Plaintiff contends the agreement to arbitrate is procedurally unconscionable because it is an adhesion contract and "was given to Plaintiff without any real choice in the matter."  Opposition at 4.  " 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' "  *Armendariz*, 24 Cal.4th at 113 (quoting *Neal v. State Farm Ins. Cos.*, 188 Cal.App.2d 690 (1961)).

The Ninth Circuit has twice held that an arbitration agreement is not presented in a contract of adhesion, and is therefore not procedurally unconscionable, when the employee is provided a meaningful opportunity to opt out.  *Najd*, 294 F.3d at 1108; *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002).  In both *Najd* and *Ahmed*, the Ninth Circuit found no degree of procedural unconscionability when the employees were presented with the opportunity to opt out of an arbitration agreement by mailing a one-page form within 30 days (as is the case here).  *Najd*,

United States District Court
Northern District of California

1    294 F.3d at 1108; *Ahmed*, 283 F.3d at 1200.  In both cases, the court did not consider whether

2    there agreement to arbitrate was substantively unconscionable, finding that analysis unnecessary in

3    light of the holding that there was no procedural unconscionability.  *Najd*, 294 F.3d at 1108 n. 2;

4    *Ahmed*, 283 F.3d at 1200.

5          The California Supreme Court has since disagreed with the Ninth Circuit's approach in

6    *Najd* and *Ahmed*.  *See Gentry*, 42 Cal.4th at 466-72.  The *Gentry* court did not find an opt out

7    provision to be dispositive on the issue of procedural unconscionability, but did agree that "the

8    freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a

9    finding of procedural unconscionability."  *Id*.  The court nonetheless found "several indications

10   that Gentry's failure to opt out of the arbitration agreement did not represent an authentic informed

11   choice."  *Id*.  The court noted that "the explanation of benefits of arbitration … was markedly one-

12   sided," as it did not mention any of the significant disadvantages to that particular arbitration

13   agreement.  *Id*.  The court also believed that despite the ability to opt out of arbitration, employees

14   were likely to feel "at least some pressure not to opt out of the arbitration agreement," given the

15   company's clear preference that employees chose arbitration and the general economic power that

16   employers wield over employees.  *Id*. at 471.

17         In this case, the process of having Plaintiff agree to arbitration entailed a modest degree of

18   procedural unconscionability.  The Court does not find a significant degree of procedural

19   unconscionability because Plaintiff was provided a meaningful opportunity to opt out of

20   arbitration by sending in a form within 30 days of being hired.  *Ahmed*, 283 F.3d at 1199; *Najd*,

21   294 F.3d at 1108; *Gentry*, 42 Cal.4th at 470.  Plaintiff was informed of her duty to opt out within

22   30 days through the Solutions InSTORE Brochure, the Election Form that was stapled to the

23   middle of the Brochure, the Plan Document that was provided in the back of the Brochure, and the

24   Acknowledgment Form that Plaintiff was required to read and electronically sign prior to

25   commencing her employment.  Coney Decl. ¶¶ 19-22, Exhs. A-D.  The Brochure informed

26   Plaintiff in large, bold letters that she could decide to opt out of arbitration.  *Id*., Exh. B at 10.  The

27   Acknowledgment Form also informed Plaintiff that a decision to opt out of arbitration would be

28   confidential and would not affect her employment.  *Id*., Exh. D.

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1   Nonetheless, the agreement in this case bears some elements of procedural

2   unconscionability.  Like the information provided to the plaintiff in *Gentry*, the materials

3   informing Plaintiff about the Solutions InSTORE program are "markedly one-sided."  *Gentry*, 42

4   Cal.4th at 470; *see also Quevado*, 798 F.Supp.2d at 1136 (noting that like in *Gentry*, the Solutions

5   InSTORE materials provided to Macy's employees "contains a one-sided explanation of the

6   benefits of arbitration….").  The Solutions InSTORE Brochure discusses all the benefits of

7   arbitration over court proceedings to make the choice appear simple, as arbitration is portrayed as

8   "less formal, less time-consuming and less expensive."  Coney Decl., Exh. B at 34.  Within that

9   context, employees are told on several occasions that a decision to opt out is a decision to

10  "exclude" oneself from the "benefits" of arbitration.  Coney Decl., Exhs. B-D.

11         The materials never explain the "potential disadvantages" to arbitration "from the

12  employee's point of view," such as "limited discovery, and limited judicial review."  *Armendariz*,

13  24 Cal.4th at 115 (also noting that "[v]arious studies show that arbitration ... reduces the size of

14  the award that an employee is likely to get, particularly if the employer is a 'repeat player' in the

15  arbitration system.").  If employees have questions, they are directed to the human resources

16  department or the Office of Solutions InSTORE.  There is no suggestion that employees consult

17  an attorney about the effect of the agreement on their legal rights. *Cf. Najd*, 294 F.3d at 1109

18  (noting that the plaintiff had "[t]he explicit opportunity to review the agreement with an attorney,"

19  which "highlighted the legal effect of the agreement.").

20         Moreover, some of the materials explaining the Solutions InSTORE program do not

21  explicitly inform employees that failing to opt out effectively *waives* their right to file a civil

22  action.  The Acknowledgment Form and the Election Form only indicate that Step 4 of the

23  Solutions InSTORE program means that employee' disputes "are resolved by a professional … in

24  an arbitration proceeding, instead of by a judge or jury in a court proceeding."  Coney Decl., Exh.

25  C, D.  The Solutions InSTORE Brochure does inform employees that failure to opt out will

26  "waive the right to a civil action and a jury trial," but only those employees who read the Brochure

27  carefully.  This text is placed in the middle of a paragraph on the middle of the twelfth page of a

28  thirteen-page brochure.  *See* Coney Decl., Exh. B at 35.

Furthermore, the Solutions InSTORE materials, "like the materials in *Gentry*, also make unmistakably clear that Macy's prefers that employees participate in the arbitration program." *Quevado*, 798 F.Supp.2d at 1137 (citing *Gentry*, 42 Cal.4th at 471-72).  The materials discussed above "leave no doubt" about the employer's preference.  *Gentry*, 42 Cal.4th at 472.  And, as in *Gentry*, "[t]he fact that the arbitration agreement was structured so that arbitration was the default dispute resolution procedure from which the employee had to opt out underscored [Macy's/Bloomingdales] pro-arbitration stance." *Id.*  "Given the inequality between employer and employee and the economic power that the former wields over the latter, … it is likely that [Bloomingdales] employees felt at least some pressure not to opt out of the arbitration agreement." *Id.*

For these reasons, the Court finds that the agreement to arbitrate "was, at the very least, not entirely free from procedural unconscionability." *Id.*  Nonetheless, this Court agrees with the *Quevado* court that "the degree of procedural unconscionability" with respect to Solutions InStore methods "is small."[3]  *Quevado*, 798 F.Supp.2d at 1138.  Thus, in order show that the agreement overall is unconscionable and should be rendered unenforceable, the Court will require "a greater showing of substantive unconsionability." *Id.*

//

---

[3] The Court disagrees with Plaintiff's arguments that the agreement was procedurally unconscionable because (1) Plaintiff was not provided a copy of the American Arbitration Association rules, and (2) it is unclear whether the arbitrator will follow the Federal Rules of Evidence and the Federal Rules of Civil Procedure.  First, the Plan Document clearly makes itself the primary source of the arbitration rules.  Coney Decl., Exh. A at 6 ("If there are any differences between the [Plan Document] and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures, the [Plan Document] shall apply.").  Plaintiff has not rebutted Defendants' evidence that Plaintiff received a copy of the Plan Document. *See* Coney Decl. ¶ 19 (noting that the Plan Document is stapled inside the Brochure that is given to new employees at orientation).  Thus, this case must be distinguished from the Court of Appeal's decision in *Trivedi v. Curexo Tech. Corp.*, where arbitration agreement was mandatory but never discussed, and where the employee never received a copy of the AAA rules.  189 Cal.App.4th 387, 392 (2010).

The Plan Document provides that the arbitrator may consult the Federal Rules of Civil Procedure when ruling on discovery disputes, and may consult the Federal Rules of Evidence when ruling on the admissibility of particular matters, but also states that the arbitrator is not bound to those Rules.  Coney Decl., Exh. A at 10-11.  Plaintiff contends that the lack of clarity regarding whether these Rules will apply makes the entire agreement unconscionable.  The Court disagrees because the arbitrator's discretion to consult the Rules does not add any element of "surprise" or "oppression" to the way in which this agreement was reached.

United States District Court
Northern District of California

1

### 2.      Substantive Unconscionability

2          Plaintiff also contends the arbitration agreement is substantively unconscionable because it

3   does not comport with the requirements described in *Armendariz v. Found. Health Psychare*

4   *Servs., Inc.*, 24 Cal.4th 83, 99 (2000), where the California Supreme Court set a certain minimum

5   standards for arbitration agreements covering statutory rights established "for a public reason,"

6   such as the right to be free from discrimination under California's Fair Employment and Housing

7   Act.  *See* Cal. Gov't Code § 12940.  Under *Armendariz*, an arbitration agreement in this context is

8   only valid if it:

9
                    (1) provides for neutral arbitrators, (2) provides for more than
10                  minimal discovery, (3) requires a written award, (4) provides for all
                    of the types of relief that would otherwise be available in court, and
11                  (5) does not require employees to pay either unreasonable costs or
                    any arbitrators' fees or expenses as a condition of access to the
12                  arbitration forum.

13   *Armendariz*, 24 Cal.4th at 102 (citing *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (D.C.

14   Cir. 1997)).

15          Plaintiff has only challenged the arbitration agreement as substantively unconscionable

16   under one of the *Armendariz* requirements − the requirement that the arbitration provide for "more

17   than minimal discovery."  *Armendariz*, 24 Cal.4th at 102.  Plaintiff argues that she needs multiple

18   depositions and other discovery tools the arbitration agreement does not guarantee in order to

19   prove her case.

20          In *Armendariz,* the California Supreme Court held that employees are "at least entitled to

21   discovery sufficient to adequately arbitrate their statutory claims, including access to essential

22   documents and witnesses."  *Armendariz*, 24 Cal.4th at 106.  "Adequate discovery, however, does

23   not mean unfettered discovery."  *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 787

24   (9th Cir. 2002); *see also Mercuro v. Superior Court*, 96 Cal.App.4th 167, 184 (2002).

25   "*Armendariz* recognized [that] an arbitration agreement might specify 'something less than the full

26   panoply of discovery provided in [California] Code of Civil Procedure.' "  *Id.* (quoting

27   *Armendariz*, 24 Cal.4th at 105).  "Ultimately it is up to the arbitrator and the reviewing court to

28

United States District Court
Northern District of California

1    balance the need for simplicity in arbitration with the discovery needs of the parties." *Mercuro*, 96

2    Cal.App.4th at 184.  Indeed, "[l]imited discovery rights are the hallmark of arbitration." *Coast*

3    *Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal.App.4th 677, 689-90 (2000) (noting that

4    if limited discovery was grounds for unconscionability, then every arbitration clause would be

5    unconscionable).

6         The discovery provisions of the agreement in this case require Defendants to provide

7    Plaintiff with "copies of all documents upon which they rely in support of their claims or

8    defenses," and Plaintiff is "entitled to a copy of all documents" in her personnel file.  Coney Decl.,

9    Exh. A at 9-10.  The parties are both limited to one set of twenty interrogatories and three

10   depositions, and all discovery must be completed within ninety days.  *Id*. at 10.  In addition, the

11   abirtrator permit additional discovery upon "a showing of appropriate justification," so long as the

12   request for discovery is not "overly burdensome, and will not unduly delay the conclusion of

13   arbitration." *Id*.

14        Plaintiff has cited no case in support of her argument that the foregoing discovery

15   restrictions render an agreement to arbitrate substantively unconscionable.  The great weight of

16   authority supports at least one California Court of Appeal in holding that "[t]he fact that an

17   arbitration may limit a party's discovery rights is not 'substantive unconscionability.' " *Coast*

18   *Plaza Doctors Hosp*., 83 Cal.App.4th at 690.  In any event, several courts have held that discovery

19   limitations similar to those here do not render an agreement substantively unconscionable.  *See*

20   *Abeyrama v. J.P. Morgan Chase Bank*, No. 12-0445, 2012 WL 2393063, at *4 (C.D. Cal. June 22,

21   2012) (limit of 2 depositions); *Mercuro*, 96 Cal.App.4th at 184 (limit of 30 discovery requests,

22   including subparts and 3 depositions); *Ferguson*, 298 F.3d at 786 (3 depositions).

23        Moreover, at least two courts have found that a provision allowing the arbitrator to grant

24   additional discovery requests lessens the degree, if any, of substantive unconscionability.

25   *Mercuro*, 96 Cal.App.4th at 184; *Abeyrama*, 2012 WL 2393063, at *4 (noting that normal

26   limitations on discovery "are generally legal if either party can ask the arbitrator to expand

27   discovery for good cause.").  In *Mercuro*, the agreement authorized the arbitrator to grant

28   additional discovery only by overcoming a "presumption against increasing the aggregate limit on

15

requests," and "only upon a showing of good cause." *Mercuro*, 96 Cal.App.4th at 182. Notably, that language requires a greater justification for the arbitrator to increase discovery limits than in this case. *See* Coney Decl. ¶ 15, Exh. A at 10 (Plaintiff need only show "appropriate justification" so long as the request is not "overly burdensome, and will not unduly delay the conclusion of arbitration."). Nonetheless, the *Mercuro* court relied on the fact the arbitrator was authorized to increase discovery limits in holding the discovery provisions adequate. *Mercuro*, 96 Cal.App.4th at 182. This bolsters this Court's conclusion that the discovery allowed by the arbitration agreement in this case is "more than minimal," *Armendariz*, 24 Cal.4th at 102, and does not render the agreement substantively unconscionable.

\*       \*       \*

As noted above, "[u]nder California law, an agreement is unconscionable only if it is both procedurally and substantively unconscionable." *Najd*, 294 F.3d at 1108 (citing *Armendariz*, 24 Cal.4th at 99). Plaintiff has not argued that the agreement is substantively unconscionable for any reason other than the discovery limitations. Having found that there is a modest degree of procedurally unconscionability and that the discovery limitations do not render the agreement substantively unconscionable, the Court finds the arbitration agreement valid and enforceable.

### C.      Whether the Case should be Dismissed or Stayed

In light of the Court's conclusion that Plaintiff's claims are subject to arbitration, the only remaining question is whether the action should be stayed or dismissed. Plaintiff contends that under California Code of Civil Procedure § 1281.4, courts are required to stay an action submitted to arbitration pursuant to an agreement of the parties. Opposition at 6. Defendants are correct to note however, that agreement in this case is subject to the FAA. Coney Decl., Exh. A at 16.

Under the FAA, a court may grant a stay pending resolution of arbitration. *See* 9 U.S.C. § 3. The Ninth Circuit has held that the FAA gives a court authority "to grant a stay pending arbitration, but does not does preclude summary judgment *when all claims are barred by an arbitration clause*." *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (emphasis added); *see also MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 7 (9th Cir. 2014) (noting that "an order compelling arbitration may be appealed if the district court dismisses all the

1  underlying claims, but may not be appealed if the court stays the action pending arbitration.");

2  *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)

3  (holding that the district court did not "err in dismissing the plaintiff's claims that were subject to

4  arbitration pursuant to Fed.R.Civ.P. 12(b)(6)"); *but see Lloyd v. HOVENSA, L.L.C.,* 369 F.3d 263,

5  268–69 (3rd Cir. 2004) (holding that "the plain language of § 3 affords a district court no

6  discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

7       This Court has previously applied the Ninth Circuit's decision in *Sparling* to dismiss a case

8  upon granting a motion to compel arbitration and finding that all claims are arbitrable.  *See*

9  *DeMartini v. Johns*, No. 12-3929 JCS, 2012 WL 4808448, at *6 (N.D. Cal. Oct. 9, 2012).  Other

10  district courts in this District have done the same.  *Molina v. Scandinavian Designs, Inc.*, No. 13-

11  4256 NC, 2014 WL 1615177, at *11 (N.D. Cal. Apr. 21, 2014); *Farrow v. Fujitsu Am., Inc.*, No.

12  13-5292 LHK, 2014 WL 1396412, at *8 (N.D. Cal. Apr. 9, 2014); *Morris v. Ernst & Young LLP*,

13  No. 12-4964 RMW, 2013 WL 3460052, at *10 (N.D. Cal. July 9, 2013); *DeGraff v. Perkins Coie*

14  *LLP*, No. 12-2256 JSW, 2012 WL 3074982, at *5 (N.D. Cal. July 30, 2012); *Monzon v. S. Wine &*

15  *Spirits of California*, 834 F.Supp.2d 934, 943 (N.D. Cal. 2011) (Breyer, J.); *Lewis v. UBS Fin.*

16  *Servs. Inc.*, 818 F.Supp.2d 1161, 1169 (N.D. Cal. 2011) (Armstrong, J.); *Torn Ranch, Inc. v.*

17  *Sunrise Commodities, Inc.*, 74 Fed.R.Serv.3d 612 (N.D. Cal. 2009) (Patel, J.).  Accordingly,

18  because the Court finds that all the issues in this case are abitrable (and Plaintiff has not argued

19  otherwise), the case will be dismissed.

20  **V.**    **CONCLUSION**

21       For the foregoing reasons, Defendants' Motion to Compel Arbitration is GRANTED and

22  the case is DISMISSED.

23       **IT IS SO ORDERED.**

24  Dated: June 11, 2014

25

26  JOSEPH C. SPERO
United States Magistrate Judge

27

28